UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-cr-138-JDL |
| | ) | |
| JOSHUA BONNETT and | ) | |
| MARQUIS AIKEN, | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTIONS TO SUPPRESS

Defendants Joshua Bonnett and Marquis Aiken, charged with knowing and intentional possession with intent to distribute a mixture or substance containing cocaine base, and aiding and abetting such conduct, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, Indictment (ECF No. 1), move to suppress evidence seized in a search of Room 218 of the Super 8 Motel at 1440 Lisbon Street, Lewiston, Maine, on November 7, 2014.  Motion to Suppress Evidence ("Aiken Motion") (ECF No. 49); Motion to Suppress Evidence ("Bonnett Motion") (ECF No. 53).

An evidentiary hearing was held before me on June 8, 2015, during which the defendants appeared with counsel; the government presented three witnesses; the government offered 18 exhibits, all of which were admitted, three over objection; and the defendants offered 24 exhibits, all of which were admitted, one over objection.  The defendants did not testify, but defendant Bonnett proffered an affidavit that was admitted, *de bene esse,* over the government's objection. The parties submitted post-hearing briefs and replies, and the motions are now in order for decision.

I recommend that the following proposed findings of fact be adopted by the court and that the motions be denied.

## I.     Proposed Findings of Fact

On November 6, 2014, a person identifying himself as Jahrael Browne rented Room 218 in the Super 8 Motel in Lewiston, Maine. Browne indicated that he and one other person would be staying in the room.

On April 9, 2014, Thomas Pappas, a Maine State Trooper assigned to the state Drug Enforcement Agency, was investigating another individual who was a high-level drug trafficker in the Lewiston-Auburn area of Maine. On that day, Pappas was working with an informant who ordered heroin and crack cocaine from the trafficker under investigation, but an unknown male showed up to deliver the drugs. He later learned that this person was Marquis Aiken. Aiken was charged with a drug crime, but the charge was dismissed several months later, because there was necessary evidence that could not be revealed at that time.

On November 7, 2014, while he was driving to work at 7:00 a.m., Pappas received a call from a reliable informant who said that drug trafficking was going on regularly at the Super 8 Motel. Pappas had been to the Super 8 Motel many times on drug-related calls; it was a common place for out-of-state drug dealers to stay. The informant said that a man and a woman in Room 216 had large bags of crack and heroin.

Pappas called Agent Nicholas Gagnon, another member of the task force, and they went to the Super 8 Motel, where they learned that the motel's register recorded a Jermaine Motley as the occupant of Room 216. Motley was known to Gagnon and Pappas as a drug and gun trafficker in the Lewiston, Maine, area. The desk clerk at the Super 8 Motel told them that there was also a female in Room 214, whom the agents assumed was Motley's girlfriend. The agents confirmed

that Motley was subject to bail conditions subjecting him to random searches, and they decided to search him and his room for bail violations.

The agents believed that "hard" drugs were in Room 216, so they kept their focus there. Wearing plain clothes, they knocked on the door of Room 216 at approximately 9:00 a.m. They continued to knock, more loudly as they received no response, for up to two minutes. The adjacent door to Room 218 opened slightly, releasing a billow of smoke that smelled like marijuana. The security chain remained in place on that door, and Pappas told the person at the door, whom he did not recognize, that he wasn't there for them.

The agents continued to knock on the door of Room 216. Another confidential informant known to the agents opened the door of a room further down the hall and told them that the drugs were in Room 216. The agents continued to pound on the door of Room 216. They could not hear any sound in the room. The door to Room 218 then swung fully open, and the agents confirmed the odor of marijuana smoke coming from that room. Pappas saw defendant Joshua Bonnett standing in the doorway of Room 218, with his hand behind the door. Defendant Marquis Aiken, whom Pappas recognized, stood behind Bonnett. Pappas could see into the room over Bonnett, who was six inches shorter than Aiken.

The agents did not go into Room 218 or prevent either man from closing its door. Pappas identified himself as a police officer and told the men that he smelled marijuana. When he saw Aiken, Pappas thought that more than just marijuana smoking was going on in the room, based on his previous contact with Aiken. Pappas asked both men to come out of the room so that he could investigate what was going on inside the room. Bennett kept his left arm behind the door despite several requests from the agents to show it.

3

Aiken was pacing and walking around in circles inside the room, saying the he wanted to put on his shoes, which he eventually did. He nonetheless kept walking and pivoting and saying that he needed his shoes. Bonnett did nothing. Pappas told the men that he was not going to leave and that either they would come out of the room or he would go in. Pappas went into the room in which no lights were on, but the curtain was open and there was light in the room from the window. Before he entered, Pappas and Aiken had called each other by their first names, and Aiken mentioned the earlier April 2014 incident when they first met.

Pappas collected a marijuana joint from Bonnett's left hand. Aiken become belligerent, yelling nonsensically. Bonnett was crying. Pappas went into the room to be sure that no one else was there and to be sure that Aiken did not run, as he had done in the earlier incident. Pappas saw no weapons in the room and asked Gagnon to handcuff Aiken based on his irrational behavior. Aiken did not resist the handcuffs and began to calm down. Bonnett initially gave differing dates of birth, but the agents were eventually able to identify him. No weapons were found in patdowns of the two men.

Pappas had observed a scale on a stand in the room. There was a bag containing an ounce of marijuana on the bed. Pappas asked the men whether there were any drugs other than marijuana in the room. Aiken said that there were no other drugs in the room and that the agents could search every drawer in the room. Pappas first opened the top drawer of the nightstand, because that was directly below the scale. He told Gagnon that he had found a large amount of crack cocaine in the drawer, informed the men that the agents would be getting a search warrant, and asked, "Whose half-kilo [or quarter-kilo] is this?" Neither man answered, but Bonnett said to Aiken, "We should have put it where we usually do."

Pappas left Gagnon at the hotel while he drafted a search warrant application and presented it to a judicial officer. Two uniformed officers transported the defendants, who had been arrested. During their search of the room after obtaining a search warrant, the agents found a Greyhound bus ticket dated November 6 from New York to Lewiston in the name of Marquis Aiken, a Pennsylvania driver's license in the name of Browne, and a Concord Coach receipt dated November 2 for Jahrael Browne, in whose name Room 218 was registered.

## II.     Discussion

### A.   Standing

The government contends that Aiken lacks standing to object to the search of Room 218 and to seek suppression of any evidence seized from it. Government's Post-Hearing Memorandum in Opposition to Defendants' Motions to Suppress ("Government Memorandum") (ECF No. 94) at 5-7. I agree.

A criminal defendant seeking to suppress evidence must show that he had a legitimate expectation of privacy in the area that was searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980). Here, despite my request at the hearing that counsel address the issue of standing in their post-hearing submissions, Aiken only cites a single case, *United States v. Conner*, 948 F.Supp. 821 (N.D. Iowa 1996), to argue that he had such an expectation. Defendant's Closing Argument (ECF No. 92) at [7]; Defendant Aiken's Response to Government's Post-Hearing Memorandum (ECF No. 97).

The defendant has the burden of establishing that he had a reasonable expectation of privacy with respect to Room 218. *United States v. Dent*, Criminal No. 08-11-P-S, 2008 WL 4446594, at *5 (D. Me. Sept. 26, 2008). Thus, in cases in which the issue is one of standing to seek suppression of evidence seized from a hotel room, a defendant must show that the room was

registered to him, or that he was sharing it with someone to whom the room was registered. *See, e.g., United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991) (important considerations in expectation of privacy equation include ownership, lawful possession, or lawful control of the premises searched). *See also United States v. Sherrill*, No. 11-cr-40027-JAR, 2011 WL 5570841, at *4 (D. Kan. Nov. 16, 2011) (individual's presence in motel room does not prove reasonable expectation of privacy there).

Aiken has made no attempt to make the necessary showing. Accordingly, the court can only conclude that he lacks standing to object to the search of Room 218 and to the seizure of any evidence from that room. His motion should be denied.

The government makes the same argument with respect to Defendant Bonnett, but that issue is more nuanced. Bonnett specifically discusses the issue of standing in his post-hearing submission. Final Argument in Connection with the Defendant's Motion to Suppress Evidence ("Bonnett Brief") (ECF No. 96) at 6-11. He points, *id*. at 6-7, to his affidavit, in which he states that he was "an invited overnight guest of [Jahrael Brown]" in Room 218 at the time of the arrest and search, that they had traveled to Lewiston from Boston together, and that he had stood with Browne at the Super 8 Motel registration desk while Browne registered for Room 218, obtained two keys to the room, and handed one of the keys to him. Affidavit of Joshua Bonnett Regarding Suppression Issues ("Bonnett Aff.") (Defendants' Exh. 38) ¶¶ 3-4. He asserts that Pappas's identification of Browne's companion seen on the Motel 8 videotape "is simply mistaken." Bonnett Brief at 8.

The government takes the position that this evidence is insufficient to meet the legal standard to establish Bonnett's standing to seek suppression of evidence seized from Room 218. Government's Post-Hearing Memorandum in Opposition to Defendants' Motions to Suppress

("Government Brief") (ECF No. 94) at 8-9.  Bonnett's post-hearing brief discusses at length the legal effects of room registration by an agent, registration under an alias, and criminal activity in the room on a claim of standing.  Bonnett Brief at 8-10.  There is nothing beyond Bonnett's speculation in the record of this case to even generate the first two theories.  The government does not rely on the third theory.  I will not consider these theories further.

Similarly, the government offers a list of evidence that the defendant does not present in support of his position, Government Brief at 8, but none of that evidence is required in order to demonstrate standing and, as to some if not all of the listed items, such evidence would not be relevant to the issue of standing.  Given that mere presence in the motel room does not confer standing, *United States v. Irizarry*, 673 F.2d 554, 556 (1st Cir. 1982), the court must look to other evidence to support Bonnett's professed reasonable expectation of privacy therein.

Bonnett states that "[h]is belonging were in [Room 218], and he was a legitimate overnight guest in the motel room."  Bonnett Brief at 10.  He cites no testimony or other evidence to support these important factual assertions, and I am aware of none.  He also asserts that his affidavit "is fully corroborated by the security cameras and the documentary evidence found in the room[,]" without identifying any of this alleged evidence.  *Id*. at 8.  If by the former he means that security camera footage shows Browne registering for the room, going out to the parking lot to speak with someone in a white pick-up truck, and returning to the motel, *id*. at 7, that information is also presented in his affidavit, Bonnett Aff. ¶ 5, but that information provides no support for Bonnett's claim of standing.  Bonnett also states that he "is clearly referenced in the registration form as the second guest[,]" Bonnett Brief at 10, but the register states only that there will be two "guests" in the room rented to Browne.  Government Exh. 18.

7

Similarly, Bonnett offers no record citation to support his assertion that "[h]is belongings were in [Room 218]." Bonnett Brief at 10, and, so far as I can tell, there is no such evidence. No inventory of the contents of the room was submitted, nor does Bonnett's affidavit mention his belongings. Bonnett offers no other evidentiary basis for his claim of standing.

In *United States v. Baskin*, 424 F.3d 1 (1st Cir. 2005), the defendant asserted in an affidavit that a third party had rented the motel room at issue for the defendant's use, and that he had the only key to the room. *Id*. at 3. "[W]hen the government attempted at the motion hearing to cross-examine [the defendant] regarding the evidence contained in his affidavit, he invoked the Fifth Amendment right against self-incrimination, and refused to respond to the questions put to him." *Id*. The First Circuit upheld the trial court's decision to strike the affidavit, and, therefore, since no other evidence of any reasonable expectation of privacy in the room had been offered by the defendant, held that he had failed to establish his standing to object to the seizure of evidence from the room. *Id*.

It is not clear how the *Baskin* defendant ended up on the witness stand, when he had already submitted an affidavit and presumably could not be forced by the government to testify, but, in any event, the facts in the instant case are not significantly different. The defendant has proffered an affidavit and asks the court to take its contents as proven evidence, despite his procedural maneuver to prevent the government from testing that evidence through cross-examination. In other circumstances in other courts, affidavits submitted by criminal defendants without the threat of cross-examination "are viewed as self-serving and given little weight." *DiMattina v. United States*, 949 F.Supp.2d 387, 411 (E.D.N.Y. 2013). *Accord, United States v. Miller*, 382 F.Supp.2d 350, 362 (N.D.N.Y. 2005); *United States v. Carlisle*, No. 04-CR-055-C, 2004 WL 1085194, at *7 (W.D. Wisc. May 7, 2004).

I am unwilling to assign more weight to Bonnett's affidavit than have other federal courts in similar circumstances. A defendant's "bald assertion that he was an overnight guest" is not enough to establish that he had a legitimate expectation of privacy in a residence, particularly where, as here, the assertion appears only in an affidavit. *United States v. Reyes-Bosque*, 596 F.3d 1017, 1027 (9th Cir. 2010). Indeed, in *Reyes-Bosque*, the court cited favorably a similar case in which the defendant's wallet, baptismal certificate, and application for a social security care were found in the premises at issue were found to be insufficient, in combination with the defendant's assertion of an expectation of privacy. *Id.*

The evidence as it is, rather than as Bonnett wishes it to be, is not sufficient to establish that he held a reasonable expectation of privacy in Room 218 of the Super 8 Motel in Lewiston, Maine, on November 7, 2014. Therefore, he lacks standing to seek suppression of the evidence seized from those premises, and his motion should be denied as to that evidence.

### B. Statements

My recommendation that the motions be denied with respect to the evidence seized from Room 218 based upon the defendants' lack of standing makes it unnecessary to consider the defendants' other arguments for suppression of that evidence, which are claims under the Fourth Amendment. However, Bonnett also moves to suppress statements that he made during the encounter under the rubric of *Miranda v. Arizona,* 384 U.S. 436 (1966), a claim arising under the Fifth Amendment, and I must reach that issue.[1] The government has made clear that it intends to use only statements made in Room 218 between Aiken and Bonnett, Government's Surreply to

---

[1] Aiken did not move to suppress any statements, nor is the issue mentioned in his post-hearing memorandum. Aiken Motion at 1-2, 12; Defendant's Closing Argument at [1]-[8].

9

Defendant Bonnett's Motion to Suppress (ECF No. 69) at 1. This analysis is, accordingly, limited to those statements.[2]

Bonnett's argument is based solely on an alleged *Miranda* violation. Bonnett Brief at 11, Reply to Government's Response in Opposition to the Defendant's Motion to Suppress Evidence (ECF No. 66) at 10-15. "*Miranda* warnings must be given before a suspect is subjected to custodial interrogation." *United States v. Taylor*, 985 F.2d 3, 7 (1st Cir. 1993) (citation and internal punctuation omitted). An accused must be advised prior to custodial interrogation "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 478-79.

The only statement by Bonnett that appears to be at issue was made to Aiken, not to any law enforcement officer, and could not reasonably be construed to have been made in response to questioning by any law enforcement officer. A volunteered statement is not the product of interrogation and is not subject to suppression. *United States v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008). A conversation between two suspects, even after they have been arrested, does not constitute interrogation for purposes of *Miranda*. *United States v. Burns*, No. CR. 01121ADMSRN, 2002 WL 1461749, at *1 (D. Minn. July 3, 2002).

### III. Conclusion

For the foregoing reasons, I recommend that the defendants' motions to suppress be **DENIED**.

---

[2] The only such statement mentioned at the suppression hearing was Gagnon's testimony that, after Pappas found crack cocaine in the drawer below the scale, Bonnett said to Aiken, "We should have put it where we usually do." None of Bonnett's written submissions address this statement, but I nonetheless consider it here out of an abundance of caution.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of August, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge