UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | No. 2:14-cr-138-JDL |
| ) | |
| MARQUIS AIKEN and ) | |
| JOSHUA BONNETT, ) | |
| ) | |
| *Defendants* ) | |

### *SECOND RECOMMENDED DECISION ON MOTIONS TO SUPPRESS*

The court having declined to adopt my recommendation that the defendants' motions to suppress (ECF Nos. 49, 53) be denied on the basis of a lack of standing, Recommended Decision on Motions to Suppress ("First Recommended Decision") (ECF No. 99), the motions are now before me for a recommended decision on the merits. Order on Objections of Defendants Marquis Aiken and Joshua Bonnett to the Recommended Decision of the Magistrate Judge on Defendants' Motions to Suppress ("Order") (ECF No. 135). For the reasons that follow, I recommend that the motions be denied.

With the agreement of counsel, oral argument was held on the motions on February 26, 2016, but no further evidence was taken. Accordingly, the proposed findings of fact from the first recommended decision, First Recommended Decision at 2-5, are incorporated herein by reference.

### I. Discussion

The government bears the burden of proving the lawfulness of warrantless searches and seizures, *see, e.g., United States v. Ramos-Morales*, 981 F.2d 625, 628 (1st Cir. 1992), including traffic stops, *see, e.g., United States v. Gates*, Criminal No. 08-42-P-H, 2008 WL 5382285, at *7 (D. Me. Dec. 19, 2008) (rec. dec., *aff'd* Feb. 12, 2009), *aff'd*, 709 F.3d 58 (1st Cir. 2013), and

arrests, *see, e.g., United States v. Jenkins*, Criminal No. 10-85-P-H, 2010 WL 3463736, at *5 (D. Me. Aug. 27, 2010) (rec. dec., *aff'd* Oct. 18, 2010), *aff'd*, 680 F.3d 101 (1st Cir. 2012).

### A. Warrantless Entry

The defendants contend that the entry of the officers into Room 218 constituted a search without a warrant for which probable cause did not exist. Motion to Suppress Evidence ("Aiken Motion") (ECF No. 49) at 4-7; Motion to Suppress Evidence ("Bonnett Motion") (ECF No. 53) at 1. This argument arises out of the Fourth Amendment's prohibition of unreasonable searches and seizures.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions[.]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government relies on the exigent circumstances exception. Government's Consolidated Response to Defendants' Motions to Suppress ("Pre-Hearing Opposition") (ECF No. 57) at 6-12. Exigent circumstances justifying a warrantless entry exist when "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *United States v. Adams*, 621 F.2d 41, 44 (1st Cir. 1980). The government also contends that the officers had consent to enter and search the hotel room, another exception to the warrant requirement. Pre-Hearing Opposition at 12-14.

#### 1. Exigent Circumstances

The government asserts that the following facts meet the applicable standard to justify a search of the hotel room without first obtaining a warrant: the strong odor of burnt marijuana emanating from the room both times the door was opened voluntarily by an occupant; the presence in the room of Aiken, who was observed the second time that the door was opened and was known to one of the officers as a person who had been present at a previous sale of illegal drugs and who

had run from the police at that time; and Aiken's unusual behavior inside the room after the door was opened the second time, including pacing and looking for his shoes even after he put them on. Government's Post-Hearing Memorandum in Opposition to Defendants' Motions to Suppress ("Post-Hearing Opposition") (ECF No. 94) at 10-14.

Much of the post-remand oral argument in this case focused on the smell of marijuana noticed by the agents when the door to the hotel room was open. Defense counsel emphasized the facts that possession of a small amount of marijuana is only a civil violation under Maine law and that Maine law now allows the possession of medicinal marijuana for which a prescription has been obtained. That emphasis was misplaced.

In the First Circuit, when a law enforcement officer detects the odor of marijuana emanating from a confined area, "that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." *United States v. Staula*, 80 F.3d 596, 602 (1st Cir. 1996). Counsel for the defendant argued vigorously that this decision must be limited to searches of vehicles, which was the factual situation in that case, and that the protected interest in privacy is greater in a residence than it is in a car.

My research has located no case in which the First Circuit so limited the scope of *Staula*. I note also that the officers were not required, before entering, to rule out the possibility that the smell emanating from the hotel room was caused by someone smoking marijuana that had been prescribed for that person for medical reasons, *United States v. Liu*, No. 2:13-CR-00050-KJM, 2015 WL 163006, at *4-*5 (E.D. Cal. Jan. 7, 2015), or was in so small an amount before being smoked that its possession would constitute only a civil violation. The same appears to be true under Maine law. *State v. Barclay*, 398 A.2d 794, 797-98 (Me. 1979).

Moreover, the government does not rely solely on the smell of marijuana to justify the officers' entry into the hotel room. Agent Pappas also knew that Aiken, whom he saw inside the hotel room, had been at the scene of an intended controlled buy of heroin and had run away when the law enforcement agent involved in the buy identified himself as such, dropping some heroin as he ran. Agent Pappas' knowledge must be considered to have been known by all of the officers involved, *United States v. Kinsella*, Crim. No. 5-27-B-W, 2008 WL 763201, at *4 (D. Me. Mar. 19, 2008), and Aiken was behaving strangely in the room while the door was open. Taken together, these facts establish probable cause to conclude that contraband was inside the hotel room. *See, e.g., Commonwealth v. Streeter*, 883 N.E.2d 290, 296 (Mass. App. 2008) (strong odor of marijuana emanating from apartment, admission by defendant resident that he had smoked marijuana, and his nervous, evasive behavior established probable cause to believe there was marijuana in the apartment).

However, the existence of probable cause does not necessarily establish exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). The government offers the following grounds for a finding of exigent circumstances: the factors giving rise to probable cause, concern that one or more of the occupants would flee, and danger that the occupants would destroy evidence. Post-Hearing Opposition at 11-14.[1] *Staula* does not address the question of exigent circumstances. In my view, the circumstances that create probable cause in this case do not establish that "there [was] such a compelling necessity for immediate action as [would] not brook the delay of obtaining a warrant." *Adams*, 621 F.2d at 44. There was no realistic possibility that

---

[1] In its initial response to the motions to suppress, the government also relies on the officers' concern for their own safety. Pre-Hearing Opposition at 9. To the extent that it continues to press this as evidence of exigent circumstances, the officers knew that, while Bonnett initially did not comply with orders to take his left hand from behind his back, that hand did not hold a weapon, and they could see that Aiken was not holding a weapon while he paced in the room and while he put on his socks.

4

the occupants of the room would attempt to flee from a second-floor hotel room, when its only exit was under the control of law enforcement agents. Nor did Aiken's presence or his nervous behavior necessitate immediate action by the agents. Since agents would presumably remain posted at the room while a search warrant was sought, the chance that evidence would be destroyed was also minimal.

The defendants cite *United States v. Race*, No. 11-CR-6157G, 2015 WL 576171 (W.D. N.Y. Feb. 11, 2015), *adopted* 2015 WL 4678624 (Aug. 10, 2015), *appeal filed* February 16, 2016, in this regard. In that case, an officer who responded to a 911 call about a "disruption" at a certain address smelled dry marijuana; heard two people conversing inside before he knocked repeatedly on the door, identifying himself as "police," after which he heard running footsteps; was "overwhelmed" by the smell of marijuana when the defendant opened the door; and then was told by the defendant that no one else was in the house. *Id*. at *3. The court held that the smell of marijuana "gave rise to the reasonable belief that some quantity of marijuana was inside the house[,]" *id*. at *19, but that the combination of these facts did not demonstrate exigent circumstances. *Id*. at *21.

The government attempts to distinguish *Race* by asserting that the presence of a "known drug trafficker" in the hotel room[2] in this case who was known to have fled police on an earlier occasion made the exigency "greater." Post-Hearing Opposition at 13. I do not see how. Is a "known drug trafficker" more likely to jump out a second-floor window than someone only suspected of being a drug trafficker? There was no greater likelihood that the room's occupants would destroy evidence in this case than there was in *Race*; if anything, the likelihood was less, as

---

[2] Contrary to the government's suggestion, Post-Hearing Opposition at 13, there is no evidence that Aiken was "under investigation for ongoing drug activity" at the relevant time.

only one room was involved rather than a house, as in *Race,* where the officers could not see most of the rooms through the open door.[3]

The defendants also cite *United States v. Conner*, 948 F.Supp. 821 (N.D. Iowa 1996). The government responds that this case "is easily distinguished[,]" because standing was not at issue, the door to the hotel room was opened involuntarily, and the need to evoke the exigent circumstances exception was lower because the evidence at issue was not drugs, which could be easily destroyed. Government's Post-Hearing Responsive Memorandum (ECF No. 98) at 2. The issue of standing has been resolved against the government in this case. The *Conner* court found it significant that there was "absolutely no evidence in the record that either [defendant was] engaged in the destruction of evidence or about to destroy evidence." 948 F.Supp. at 850. The same is true here. Officers seeking to rely on the exigent circumstances exception, that court said, "must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *Id*. That showing has not been made in this case.

Other bases for application of the exigent circumstances doctrine are hot pursuit of a fleeing felon and where police must act quickly to save someone's life or prevent harm. *United States v. Lawlor*, 324 F.Supp.2d 81, 85 (D. Me. 2004). The government does not invoke either.

On the showing made, the government has not established the existence of exigent circumstances that justify the warrantless entry into the motel room. This conclusion makes it unnecessary to consider the defendants' argument that the law enforcement agents created the

---

[3] The government asserts that "[i]t was . . . objectively reasonable to freeze the scene in anticipation of a search warrant or a consent search." Post-Hearing Opposition at 13-14. But, that is not what the agents did. They went into the room and searched it before seeking a warrant. This suggestion that the officers could "freeze the scene" highlights the fact that the government does not suggest that the officers could not keep open the door that Bonnet had voluntarily opened while seeking a warrant, thereby decreasing any likelihood that evidence could be destroyed in the interim.

exigent circumstances, if any existed, which would make the doctrine unavailable to the government.  Motion to Suppress Evidence ("Bonnett Motion") (ECF No. 53) at 9.

### 2. Consent

In the alternative, the government contends that Aiken provided the agents with consent to search the motel room.  Pre-Hearing Opposition at 12-14.  Consent to search must be given freely and voluntarily.  *United States v. Marshall*, 348 F.3d 281, 285-86 (1st Cir. 2003).  Here, Aiken invited the officers to search after Pappas had entered the room and directed Gagnon to handcuff Aiken due to his erratic behavior.  Pappas then asked Aiken and Bonnett if there were any drugs other than marijuana in the room.  Aiken replied that there were no other drugs in the room and invited the agents to search every drawer in the room.

This unsolicited consent was given within a few minutes of the entry that violated the Fourth Amendment.  Consent given within a few minutes of such a violation favors suppression. *United States v. Montgomery*, 777 F.3d 269, 274-74 (5th Cir. 2015).  However, consent that was unsolicited favors denial of suppression.  *Id.*; *United States v. Mendoza-Salgado*, 964 F.2d 993, 1011-12 (10th Cir. 1992).  In addition, Aiken had been advised that he was not under arrest and no threats were made by the two officers who entered the room without drawing their weapons. The Fourth Amendment violation was not flagrant.

Bonnett argues that Aiken's consent was not voluntary because he was 22 years old at the time, "without any significant criminal history" and "obviously overwhelmed and distraught" as a result of the two officers' "display of force and authority," which was "sufficient to overbear his will."  Reply to Government's Response in Opposition to the Defendant's Motion to Suppress Evidence ("Bonnett Reply") (ECF No. 66) at 18.  Other than Aiken's age and lack of criminal history—although Pappas' knowledge of Aiken's earlier involvement in drug trafficking is

relevant here—these factual assertions are not borne out by the evidence elicited during the hearing.

Aiken asserts that he "denies giving consent to search the room," Defendant Marquis Aiken's Reply to the Government's Opposition to Defendant's Motion to Suppress (ECF No. 62) at 5, but he did not testify at the hearing and produced no other evidence to support this assertion. Bonnett also contends, in conclusory fashion, that Aiken's consent is invalid and "fruit of the prior illegal entry," Final Argument in Connection with the Defendant's Motion to Suppress Evidence (ECF No. 96) at 11, but he lacks standing to raise this argument. *United States v. Kimball*, 813 F.Supp. 95, 100 n.6 (D. Me. 1993).

Taking these circumstances as a whole, Aiken's consent bars suppression. *See generally United States v. Marshall,* 348 F.3d 281, 285-86 (1st Cir. 2003).

### 3. Request to Step Out of the Room and Use of a Flashlight

Bonnett also contends that "[t]he police order to Aiken and Bonnett to leave their motel room . . . [was] unreasonable under the Fourth Amendment." Bonnett Reply at 1. It is not clear why this is presented as a separate reason for suppression of the fruit of the search of the hotel room, particularly since neither Aiken nor Bonnett complied with the request. Even the dissenting opinion cited by Bonnett on this point, *id*. at 2-3, makes clear that its analysis is based on the fact that the defendant in that case complied with the request that he step outside his motel room. In addition, I have already concluded that the officers' entry into the room violated the Fourth Amendment, so this argument adds nothing to the court's consideration of Bonnett's motion to suppress.

Similarly, Aiken's contention that Pappas violated his Fourth Amendment rights by searching the "unlit" room with his flashlight, Aiken Motion at 7-8, adds little to the consideration of his motion at this point, where the entry itself has already been found to have violated the

8

Amendment. Nonetheless, I offer two observations on the merits of this argument. First, the unchallenged testimony at the hearing was that the window in the room was uncurtained, and the events at issue took place at 9 a.m. or shortly thereafter. The only mention of a flashlight during the hearing was Pappas' testimony that he had a flashlight but did not shine it into the room. Second, all of the case law cited by Aiken, Motion at 7-8, involves shining a flashlight into the windows of a darkened house from outside the house. Using a flashlight inside a room that has already been entered appears to present a significantly different factual scenario.

### 4. Bonnett's Statement

At oral argument, Bonnett's attorney contended that his motion to suppress a statement that he made to Aiken in Room 218 remained before the court for action after Judge Levy's order recommitting the motions to suppress to me after rejecting my recommendation that the motions be denied on the basis of a lack of standing. In that order, Judge Levy adopted my recommendation "with respect to the statement made by Bonnett to Aiken that Bonnett moved to suppress . . ., to which no objection was made[.]" Order at 5. It appears to me that this statement clearly forecloses any further consideration of the motion to suppress the statement.

Should my reading of Judge Levy's order on this point be incorrect, I reiterate my earlier recommendation. "*Miranda* warnings must be given before a suspect is subjected to custodial interrogation." *United States v. Taylor*, 985 F.2d 3, 7 (1st Cir. 1993) (citation and internal punctuation omitted). An accused must be advised prior to custodial interrogation "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

The only statement by Bonnett that appears to be at issue was made to Aiken, not to any law enforcement officer, and could not reasonably be construed to have been made in response to questioning by any law enforcement officer. A volunteered statement is not the product of interrogation and is not subject to suppression. *United States v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008). A conversation between two suspects, even after they have been arrested, does not constitute interrogation for purposes of *Miranda*. *United States v. Burns*, No. CR. 01121ADMSRN, 2002 WL 1461749, at *1 (D. Minn. July 3, 2002).

### B. The Search Warrant

Aiken contends that Pappas used information obtained during an unlawful search to obtain the search warrant that he sought while Gagnon secured the room, making the search warrant invalid. He also argues that in his application for the warrant, Pappas did not establish his qualifications to identify the smell of burning marijuana, making even that observation unavailable to support the application. Aiken Motion at 10-11. Bonnett agrees, and contends as well that the "independent source" doctrine cannot save the search warrant. Bonnett Reply at 18-23.[4]

If the court agrees with my conclusion that Aiken voluntarily consented to the agents' search of the motel room, there is no need to reach the defendants' arguments concerning the search warrant and Pappas' affidavit that was submitted in connection with the application for that warrant. Nor is it necessary to consider the government's contention that Pappas and Gagnon intended to seek a search warrant for the room before they entered it. Post-Hearing Opposition at

---

[4] Significantly, neither Aiken nor Bonnett identifies any evidence that was discovered only as a result of a search of the room pursuant to the search warrant, which might be subject to suppression even if the entry into the room had been lawful. If all of the evidence that the defendants seek to suppress was located during the initial search of the room, to which I have concluded Aiken consented, consideration of the validity of the search warrant would appear to be an empty exercise.

14. In addition, my conclusions about probable cause to enter the room apply equally to the factual allegations in Pappas' affidavit.

### C. Fruit of the Poisonous Tree

Aiken argues that a digital scale with drug residue, a baggie of marijuana, and crack cocaine were all obtained by the officers "directly or indirectly from a violation of the Fourth Amendment" and, therefore, must be suppressed. Aiken Motion at 11-12. Bonnett does not make a separate argument on this basis. Because I have concluded that Aiken gave valid consent to the search of the hotel room that resulted in the seizure of these items, there is no poisonous tree to taint that evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the defendants' motions to suppress be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of April, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge