# CA No. 17-1036

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellant,

v.

MARQUIS AIKEN,

Defendant - Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

_____

PETITION FOR REHEARING
WITH SUGGESTION OF HEARING EN BANC, for
APPELLEE MARQUIS AIKEN

_____

<div style="margin-left: 50%;">

Vivian Shevitz
Counsel for Appellee
  MARQUIS AIKEN
46 Truesdale Lake Drive
South Salem, New York 10590
914 763 2122
vivian@shevitzlaw.com

</div>

# TABLE OF CONTENTS

TABLE OF CASES.................................................................ii

INTRODUCTION.....................................................................1

REASONS FOR GRANTING REHEARING AND REHEARING EN
BANC.....................................................................................1

THE MAJORITY AND DISSENTING OPINIONS...............................2

  1.   How A Defendant Undertakes to Satisfy His Burden  Should
  Not Be a Factor...................................................................3

  2.   "The Purpose" for the Motel Stay ...................................7

  3.   Length of Stay ...............................................................9
     Privacy Cannot Depend on How Much Sleeping One Does and at
     What Time of Day ...........................................................10

Reasons for Rehearing ...........................................................13

Reasons for Rehearing *En Banc* ...........................................15

CONCLUSION .......................................................................16

ADDENDUM: The Panel's Opinion of December 18, 2017 …...  Attached

# TABLE OF CASES

*Bumper v. North Carolina*, 391 U.S. 543 (1968). ....................................8

*Campbell v. United States*, 2015 WL 3770271 (M.D. Fla. 2015)..............4

*Katz v. United States*, 389 U.S. 347 (1964) .............................................12

*Minnesota v. Carter*, 525 U.S. 83 (1998) ...................................................7

*Minnesota v. Olson,* 495 U.S. 91 (1990). ...................................... *passim*

*United States v. Baskin*, 424 F.3d 1 (1st Cir 2005) ..................................7

*United States v. Castellanos*, 716 F.3d 828 (4th Cir. 2013).....................4

*United States v. Hernandez Camacho*, 779 F.2d 227 (5th Cir. 1985). .....6

*United States v. Lincecum.* 220 F.3d 77 (2d Cir. 2000) ...........................7

*United States v. Ross*, 456 U.S. 798 (1982)..............................................15

*United States v. Ven–Fuel, Inc.,* 758 F.2d 741(1st Cir. 1985)................13

*United States v. Zermeno*, 66 F.3d 1058 (9th Cir. 1995) .........................4

*Vinick v. United States*, 205 F.3d 1 (1st Cir. 2000) ................................13

## INTRODUCTION

On December 18, 2017, a majority of a Panel of this Court reversed the district court's ruling (Addendum A) that Petitioner Aiken had an expectation of privacy in a motel room in which he was a guest of a guest, and where he had recently been awakened by law enforcement officers pounding on the door to the room next door.  Over a vigorous dissent, the majority found that Petitioner had not satisfied his burden to establish a reasonable expectation of privacy, and it reversed the district court's order suppressing evidence seized from the motel room.

## REASONS FOR GRANTING REHEARING AND REHEARING EN BANC

This case presents both of the paradigmatic reasons for granting rehearing or rehearing *en banc*:

1)  The majority's decision conflicts with long-standing Supreme Court precedent and with precedent from other Circuits.  Consideration by the full Court will secure and maintain the integrity and uniformity of this Circuit's decisions;

2)  This case presents a question of exceptional importance, especially in this age of rapidly advancing technology, and that is; what

1

is privacy and when and where can individuals expect to have and maintain it?  What is future of the Fourth Amendment if an individual cannot expect privacy behind a closed and locked door of a motel room in which he was sleeping?

    3)  The Panel should itself grant rehearing because it did not consider the import of Exhibit 10 in evidence, Aiken's bus ticket establishing his arrival earlier in the day, and it misconstrued the recorded conversation between Aiken and his mother, where he told her that he spent the night in the room and was sleeping when the police arrived.  It should reconsider creating precedent that requires a defendant to show that he expected privacy because he slept there for a long enough time, whatever that might be, but does not account for the fact that a person's sleeping habits may depend on a work schedule or other factors that should not control a determination about one's expectation of privacy.

## THE MAJORITY AND DISSENTING OPINIONS

    The majority, dissent and the district court all agreed about certain foundational principles.  It was Aiken's burden to show his "subjective expectation of privacy and that society accepts that

2

expectation as objectively reasonable." *Op at 4-5.* From there, the opinions sharply diverged.

1. **How A Defendant Undertakes to Satisfy His Burden Should Not Be a Factor**

Although the majority does not reject outright Aiken's arguments based on affirmative facts elicited and inferences drawn from the testimony of government witnesses, "the fact that he came forward with no evidence on a motion he had the burden to carry" permeated its analysis and the inferences it was willing to accept. (*Op at 7-9)*[1]

The majority accepted the district court's inference that Aiken was the guest of co-occupant Bonnett, and that Aiken "was invited by Bonnett to sleep in the motel room 'for more than a brief period,'" but it refused to make "any other inferences," because Aiken did not come forward with any evidence. *Id.* at 7-8.

According to the dissent the majority to the incorrect view that "the law puts some kind of cap on the number of inference judges can draw from the evidence." *Dissenting Opinion* at 24. State of mind, such as a subjective expectation of privacy, or a meeting of the minds in the

---

[1] The majority mentioned Aiken's failure to come forward with evidence at least seven times.

3

conspiracy context, is routinely ascertained from circumstantial evidence. *See Direct Sales Co. v. United States*, 319 U.S. 703, 711-13, (1943) (agreement need not be shown to have been explicit; it can be inferred from the facts and circumstances of the case). But the majority refused to apply this ordinary legal reasoning.

There is no caselaw to the effect that a defendant is required to be the proponent of evidence or testimony in order to establish his expectation of privacy. The dissent cites opinions in other Circuits that a "defendant need not affirmatively present evidence of his legitimate expectation of privacy; rather, he may simply 'point to specific evidence in the record which the government [has] presented.'" *United States v. Castellanos*, 716 F.3d 828, 846 (4th Cir. 2013), *quoting United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995) (alteration in original). *Dissenting Opinion* at *23, fn 12; *see Campbell v. United States*, 2015 WL 3770271, at *12 (M.D. Fla. June 17, 2015) (defendants may rely on "circumstantial evidence, judicial notice, cross-examination of the government's witnesses, as here, or something else to establish a defendant's expectation of privacy").

4

The government did not argue below that Aiken was required to call witnesses, or testify or produce other evidence. After the district court granted a hearing, the government did not take the position that the burden-bearing defendants were required to present their case first. The law enforcement and motel witnesses called by the government were equally Aiken's witnesses, whom he likely would have called if the government did not. The district court found that their testimony and physical exhibits established Aiken's expectation of privacy.

To cast Aiken as the burden-carrying litigant who failed to do any "lifting" misapprehends the nature of the burden and puts form over substance. Witnesses were proffered for his cross-examination and, as with all witness, Aiken could make use of their favorable direct testimony, as well as physical evidence in the government's possession, that support the district court's findings.

In rejecting those findings, the majority overlooked the content and import of the government's exhibits (*e.g.,* recorded conversations between Aiken and his mother and Aiken's bus ticket), mentioning only their existence. Aiken's Greyhound bus ticket, (GX10), showed that he arrived in Lewiston from New York around 1:00 p.m. on November 6th.

5

The motel videos footage showed that two individuals checked into the room at 1:40 p.m. (GA38). One of the Agents testified that Aiken did not have a local residence. (GA54-55). Aiken was an out-of-town traveler who arrived earlier in the day, the type of individual who would need a motel room to escape the cold, rest, watch tv and sleep. It is a perfectly sound inference that such a person, who was asleep in the room the next morning, used the room as his overnight lodging.

The majority should reconsider its ruling that Aiken had to do more than establish that he arrived the day before and was asleep the next morning behind a locked door in a place he had a right to be.

It a defendant cannot rely on witnesses called by the government (the best kind, because judges believe them more often than defense witnesses), he is faced with a choice between testifying or giving up his right not to incriminate himself under cross-examination. Testifying at a suppression hearing carries substantial risks; it can be used as the basis of an obstruction of justice enhancement and to calculate drug quantity at a sentencing proceeding. *See, e.g. United States v. Hernandez Camacho*, 779 F.2d 227, 231–32 (5th Cir. 1985).

6

Had Aiken proffered an affidavit, it would have been rejected by the court, as was Bonnett's, and as are most of defendants' affidavits proffered in suppression motions in this Circuit. *See,* e.g. *United States v. Baskin*, 424 F.3d 1 (1st Cir 2005).[2] Aiken would, however, still be exposed to an increased sentence if suppression were denied, if he were convicted after trial or pled guilty. *See United States v. Lincecum.* 220 F.3d 77, 80 (2d Cir. 2000).

Rehearing should be granted in order for the majority to reconsider its view that a defendant cannot demonstrate an expectation of privacy (except perhaps in extraordinary circumstances) without testifying or producing witnesses or affirmative evidence. The evidence at a suppression hearing should not be evaluated according to who offers it first.

### 2. "The Purpose" for the Motel Stay

Drawing on the particular facts of *Minnesota v. Carter*, 525 U.S. 83 (1998), the majority identified three factors relevant to assessing a

---

[2]    In contrast, the government routinely proceeds by way of affidavits of law enforcement witnesses, including at bail proceedings and before magistrates who rely solely on agents' affidavits in issuing warrants, where the witnesses are not subject to cross-examination.

defendant's reasonable expectation of privacy: (1) the nature of the visit; (2) the length of stay, and (3) relationship to the host. (*Op.* 9)   In *Carter,* according to the Supreme Court, defendant spent about two and one-half hours on the premises for the purpose of bagging cocaine. *Id.* at 91.

*Carter* and Aiken's case are not comparable.  Aiken was there for lodging and sleeping, regardless of any other purpose he had.   If the sole focus of the privacy inquiry is an underlying "purpose of the stay," there would never be suppression hearings; the rule would be – wrongdoers have no privacy interests.  Violations of the Fourth Amendment would be relegated to civil rights or tort actions and an amorphous calculation of damages.

The discovery of wrongdoing is simply the seminal fact that brings the case to court.   "Any idea that a search can be justified by what it turns up was long ago rejected in our constitutional jurisprudence." *Bumper v. North Carolina*, 391 U.S. 543, 548 n.10 (1968).  A traveler laying down his head, whether or not he is blessed with actual sleep, is the quintessential way in which a motel room is used, and it is a quintessentially private activity.  In addition, staying at a lodging house

is a "longstanding social custom." *Minnesota v. Olson,* 495 U.S. 91, 98 (1990).

### 3.   Length of Stay

The majority's primary dispute with the district court is that it "made no findings as to the amount of time Aiken spent in the room," and it repeated its refrain that "Aiken provided no evidence as to when he arrived at the motel or the room." (*Op.* 10)

Aiken's ticket showed that he arrived in Lewiston, as an out-of-town traveler, in early afternoon on November 6th and was sleeping in the motel room at 9:00 a.m. on November 7th.  The motel witness testified that a defense investigator attempted to obtain the motel's video footage before the hearing, but the footage had been written over. Law enforcement had previously obtained footage of the check-in, but did not request footage of the officers entering the room or Aiken's arrival. (GA39-40).[3]

For obvious reasons, neither Bonnett nor Browne (the motel registrant) were going to testify on Aiken's behalf.  Aiken proffered the

---

[3]   The motel had many cameras, including one that would have shown the entrance to the room. (GA39-40)

9

evidence that was available at the time of the hearing – that he was in the room behind a locked door, in a state of undress at 9:00 a.m., and that was sufficient.  The government offered his bus ticket showing he had arrived at about 1:00 in the afternoon.  He was there a long time.

### Privacy Cannot Depend on How Much Sleeping One Does and at What Time of Day

Similarly, the majority found that Aiken failed to, but "could have easily supplied," evidence of how he knew the men associated with the motel room, other than "for the business of trafficking drugs." *Op.* 9-10.

It is self-evident.  The undisputed evidence establishes that he knew Bonnett well enough to be sleeping in the room with him.  That Aiken knew Bonnett, and was obviously in the room with Bonnett's permission, and he was sleeping (*i.e.* doing something other than packaging drugs), should have been enough.

The majority's opinion could be taken to mean that only individuals who are abiding by the law, and associating with other law abiders, have an expectation of privacy in a motel room.  That is not the law and it should not be allowed to remain law in this Circuit.

The majority even accepted the district court's finding that "Aiken slept in the motel room for "longer than a brief period of time."

10

However, again seeking to oust the defendant from privacy rights because of the illegal activity of drug-dealing, the majority then recast the scenario as "a drug trafficker who is present inside a motel room and falls asleep for an unknown period of time." This, the majority concluded, is qualitatively different than being "an overnight guest." (*Op.* 11).

Because drugs were found in the room and because Aiken did not produce affirmative evidence, the majority refused to proceed to the obvious inference that Aiken was an "overnight guest," or even that "he had spent the whole night in the room," within the meaning of *Minnesota v. Olson*, *supra*. (Op. 11-12, fn.4).

Trial judges routinely give juries a circumstantial evidence charge -- that circumstantial evidence is just as valid as direct evidence. Yet the majority rejected the district court's findings because they "were made from inferences," and were therefore insufficient to show an "objectively reasonable expectation of privacy." (*Op.* 12)

Many people work "overnight" shifts, or take overnight flights, and then do their "overnight" sleeping at another time of the day. Likewise, many people do not sleep "the whole night," but instead need

11

only a few hours to refuel or, for whatever reason, cannot sleep "the whole night."  The majority draws an ephemeral line in the sand that is so close to the shoreline that it cannot survive the slightest shift in the tide.  That line would mean that any stretch of sleep that does not span the midnight hour cannot be an "overnight" stay and, therefore, cannot show an expectation of privacy.

The majority reads *Olson* far too narrowly, construing the examples cited in the opinion (houseguest, visiting family members and distant relatives) as exclusive limitations.  The majority ignores *Olson's* specific reference to hotel rooms as another "private place to sleep," where "[society] expects at least as much privacy … as in a telephone booth," *i.e.* "'a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.'" *Minnesota v. Olson*, 495 U.S. at 99, *quoting Katz v. United States*, 389 U.S. 347, 361 (1964).  The majority overlooked the fact that *Olson* included motel guests in the category of those "who are imbued with an expectation of privacy." (*Op.* 13).

## Reasons for Rehearing

The Panel should grant rehearing to reconsider whether the
district court's decision deserves the deference it is ordinarily afforded,
in light of record facts that the majority may not have appreciated.
*Vinick v. United States*, 205 F.3d 1, 4 (1st Cir. 2000), *citing United
States v. Ven–Fuel, Inc.,* 758 F.2d 741, 744–45 (1st Cir.1985) ("we
present the facts and the reasonable inferences therefrom in the
manner most hospitable to the appellee, to the extent consistent with
record support").

In order to exclude Aiken from the category of overnight guest, the
majority ignored Aiken's words to his mother that he had "spent the
night there" and that he was "asleep" at nine in the morning when the
police started banging on the door next door. (GA306-307); *Dissenting
Op.* at 22.

Aiken had no reason to, and he was clearly not, fabricating in this
conversation with his mother, in which he corrected her suggestion that
"he was just visiting"[4] and instead told her – in a statement that could

---

[4] The majority attributes the statement about "visiting" to Aiken, (*Op.*
15) (GA303). It was his mother who said he was just visiting and that
he was staying in another room, in attempting to fashion an excuse for

be admitted as a statement against interest -- that he was staying in a room where narcotics were seized.  In addition, Aiken's bus ticket (GX 10) showed that he had travelled from out-of-town, placing him in the category of people society recognizes as those who seek out privacy in a motel or other temporary lodging.  Finally, the testimony about the motel key was that it was in the room, not that it was on Bonnett or that it was Bonnett's. (GA 259).  Had Aiken left the room with the key, for a soda or coffee, he could have let himself back in when he returned.

Applying the appropriate standard, drawing all reasonable inferences in favor of the judge's ruling after reviewing the record as a whole, the dissent listed the record facts that firmly supported an inference that Aiken spent the night in the room (Aiken's state of undress 9:00 a.m., unmade beds, Aiken told his mother he spent the night in the room, he was asleep when the police arrived).  *Dissenting Op.* 19-20.  The Panel should grant rehearing so that the majority may reconsider its ruling in light of the record facts.

---

her son. Aiken corrected her and told her there was no other room, and that he "spent the night there [in the room with Bonnett]." (GA303, 307).

## Reasons for Rehearing *En Banc*

As the dissent points out, the majority's interpretation of "overnight guest" mires the law in ambiguity and arbitrarily bestows a privacy interest on those with a greater need or opportunity for sleep. (*Op.* at 25). The Supreme Court has rejected that approach in a similar context; the Fourth Amendment forecloses any privacy-interest distinction between "paper bags, locked trunks, lunch buckets, and orange crates;" a traveler who carries his possession "in a paper bag or knotted scarf [has] an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case." *United States v. Ross*, 456 U.S. 798, 822 (1982).

The semantic distinction the majority makes should be reviewed by the Court *en banc,* because it cannot be reconciled with the Fourth Amendment.

*Minnesota v. Olson* established that "*status as an overnight guest is alone enough"* to show that a defendant had an expectation of privacy "that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96-7. The majority and the dissent acknowledge that *Olson* is the law,

but the majority sets the Fourth Amendment adrift in the interstices of night and day.

The word "overnight" is not a mystery within the meaning of *Olson*; it easily encompasses the activity of sleeping in a motel room: "when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend." *Id.*

Rehearing *en banc* should be granted in order for the full Court to consider these important Constitutional principles and ensure that First Circuit law is in accord.

## CONCLUSION

Petitioner Aiken respectfully requests that the Panel grant rehearing.  In the alternative, the First Circuit should consider this important, precedent-setting case *en banc*

Dated: New York, New York
       January 1, 2018

                                         Respectfully submitted,

                                         /s/ Vivian Shevitz
                                         Attorney for Appellee/Petitioner
                                         MARQUIS AIKEN
                                         46 Truesdale Lake Drive
                                         South Salem, New York 10590
                                         914-763-2122
                                         vivian@shevitzlaw.com

**Certificate of compliance as required by Fed. R. App. P. 32(a)(7)**

I, Vivian Shevitz, hereby certify, pursuant to Fed. R. App. P. 32(a)(7), that the typeface herein is Century Schoolbook 14 font, and that there are 3,100 words according to the Microsoft Word wordcount, excluding the cover, the Table of Contents, and the Table of Cases.

Dated:  South Salem, New York

January 1, 2018

/s/_____

Vivian Shevitz

# United States Court of Appeals
## For the First Circuit

No. 17-1036

UNITED STATES OF AMERICA,

Appellant,

v.

MARQUIS AIKEN,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Stahl and Thompson,
Circuit Judges.

Benjamin M. Block, Assistant United States Attorney, with
whom Richard W. Murphy, Acting United States Attorney, Margaret D.
McGaughey, Assistant United States Attorney were on brief, for
appellant.
Vivian Shevitz for appellee.

December 18, 2017

**STAHL**, **Circuit Judge**.  In this criminal appeal, we must decide whether the Defendant, Marquis Aiken ("Aiken"), had a reasonable expectation of privacy under the Fourth Amendment in the motel room where he was at the time of a police search of the premises.  The district court ruled in Aiken's favor.  The government timely filed this appeal.  After careful review, we reverse and remand.

## I. FACTUAL BACKGROUND

On November 7, 2014, two state troopers and members of the Maine Drug Enforcement Agency ("MDEA") received a tip that individuals who were in room 216 at the Super 8 Motel in Lewiston, Maine had with them large bags containing crack, cocaine or heroin. The Super 8 Motel was known to the agents as a common stopover for out-of-state gun and drug traffickers.

At approximately 9:00 AM, MDEA agents began knocking on the door to room 216.  Although no one from room 216 responded to their repeated knocks, an unidentified man partially opened the door to room 218.  Although room 218 smelled of marijuana, the agents informed the man that they were not there for him.[1]

After a minute or two, the door to room 218 opened again. A man subsequently identified as Joshua Bonnett ("Bonnett") stood by the door and Aiken stood five to ten feet behind him.  Aiken

---

[1] The agent "believed somebody was actively smoking in the room."

- 2 -

was barefoot and only wearing shorts. The agents noticed "one particular bed look[ed] like the sheets and the comforters were pulled back and the other one liked [sic] like it had just been made." One of the agents recognized Aiken from a relatively recent heroin trafficking arrest.[2] Aiken's presence raised suspicions that "there was possibly more going on inside that room besides marijuana."

The agents asked both men to step out of the room. When neither man exited the room, the agents entered, conducted a security sweep and observed what appeared to be a bag containing marijuana on one of the beds and a digital scale dusted with white powder on a nightstand between the two beds. One of the agents opened the top drawer of the nightstand and discovered a bag containing one-quarter to one-half kilogram of a substance that appeared to contain cocaine base.

The agents subsequently obtained a search warrant, and as a result of the evidence seized in the search, the government charged Aiken and Bonnett with possession with intent to distribute a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting such conduct, in violation of 18 U.S.C. § 2.

---

[2] That arrest occurred in April 2014 for possession or trafficking heroin, however, the case was later dismissed.

ADDENDUM - Panel Opinion   -   Page 3

Both Aiken and Bonnett filed motions to suppress all evidence seized as a result of the search. Originally, the magistrate judge heard the evidence and determined that neither Bonnett nor Aiken could challenge the search of the motel room. On de novo review, without hearing any new evidence, the district court reversed the magistrate's decision. The district court found that both Defendants had a reasonable expectation of privacy in the motel room and could contest the search as a violation of their Fourth Amendment rights.

The district court determined that Jahrael Browne ("Browne") had rented room 218 at the Super 8 Motel with another person, Bonnett, and that Aiken stayed in the room with Bonnett. The district court explained that "Bonnet was Browne's traveling companion from Massachusetts to Maine" and Browne rented the room accompanied by another person who appeared from a video to be Bonnett. The motel registration reflected two persons staying in the room; however, only Browne's name was included on the registration form. In addition to Bonnett and Browne traveling together, Browne's license was found in the motel room, "further suggesting a connection between Browne and Bonnett." Bonnett was also in possession of the room key at the time the agents entered the room. At 9:00 AM, the appearance of the room and the occupants "were consistent with two occupants -- Bonnett and Aiken -- having slept in the room and, therefore, having occupied the room for

ADDENDUM - Panel Opinion   -   Page 4

more than a brief period." Post-arrest statements made by Aiken to his mother "confirm that the room was Bonnett's room and that Aiken stayed there with Bonnett's knowledge."

Finding that both Bonnett and Aiken could challenge the search, the court ruled that the search violated the Fourth Amendment and granted Aiken and Bonnett's motions to suppress. The government appealed the district court's decision as to Aiken's expectation of privacy.

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error and its conclusions of law de novo. See United States v. Carty, 993 F.2d 1005, 1008 (1st Cir. 1993).

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011)(emphasis added)(citing Minnesota v. Olson, 495 U.S. 91, 95 (1990)). "The burden of proving a reasonable expectation of privacy lies with the defendant." United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). "In order to make such a demonstration, the defendant

ADDENDUM - Panel Opinion - Page 5

must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable."  Id.

### III. DISCUSSION

In determining that Aiken had a reasonable expectation of privacy in the motel room, the district court first determined that Bonnett was a guest in the room with Browne.  From there, the court inferred that Aiken was an invited guest of Bonnett.  On appeal, the government argues that the district court erroneously found that Aiken was a guest of Bonnett and further contends that Aiken did not demonstrate that he had a reasonable expectation of privacy in the room.  We address the two issues in turn.

A.    Aiken's Guest Status

To the extent the district court found that Aiken was a guest because Bonnet invited Aiken into the room, the district court did not clearly err.  Aiken was in the motel room along with Bonnett when the agents conducted the search.  Based on the appearance of the two beds in the motel room and Aiken's state of undress at 9:00 AM, the district court concluded that Aiken "slept in the room" for "more than a brief period."  It was not improper for the court to draw the inference that Bonnett had invited Aiken into the room.

We pause here to emphasize that we use the term guest in accordance with the district court's finding, made entirely by inferences, without direct evidence showing that Bonnett invited

- 6 -

ADDENDUM - Panel Opinion    -   Page 6

Aiken into the motel room.  In fact, Bonnett's affidavit, which he
provided to the court in support of his motion to suppress, did
not even mention Aiken.  It would be inappropriate for this Court
to make any other inferences to support Aiken's reasonable
expectation of privacy, in light of the fact that he came forward
with no evidence on a motion that he had the burden to carry.  As
such, the term guest, at least in this case, does not carry with
it any Fourth Amendment protection unless and until the defendant
has satisfied his burden of proving a reasonable expectation of
privacy.  See Mancini, 8 F.3d at 107.

An invitation to be present in a location does not
automatically confer Fourth Amendment privacy protection.  See
Rakas v. Illinois, 439 U.S. 128, 148, (1978)("[T]he fact that they
were legitimately on [the] premises . . . is not determinative of
whether they had a legitimate expectation of privacy.")(alteration
in original)(internal citations omitted); see also United States
v. Irizarry, 673 F.2d 554, 556 (1st Cir. 1982)("The hotel room
here was registered to [Defendant 1 but Defendant 2], however,
offered no evidence of any personal interest in the room beyond
his being 'merely present.'").[3]  Aiken's guest of a guest status

---

[3] Other circuits have analyzed a defendant's reasonable
expectation of privacy by focusing on the hotel guest's
designation.  For instance, in the Tenth Circuit, an unregistered
visitor was found to lack a subjective expectation of privacy in
a motel room because he was aware of the motel's policy that
forbade persons other than registered guests from using the motel

ADDENDUM - Panel Opinion   -  Page 7

does not resolve the question of whether he had a reasonable expectation of privacy in the room. Therefore, we turn to the government's second argument.

B.  <u>Aiken's Reasonable Expectation of Privacy</u>

In finding that Aiken had a reasonable expectation of privacy, such that he could challenge the search of the motel room, the district court found that Aiken was a guest who spent more than a brief period of time in the room. On appeal, however, the government challenges whether Aiken met his burden. Although the district court did not clearly err in finding that Aiken was Bonnett's "guest" -- that is, Aiken was invited by Bonnett to sleep in the motel room for "more than a brief period," it incorrectly inferred that Aiken had an objectively reasonable expectation of privacy based on these facts alone.

As previously mentioned, the burden is on the defendant to show that he had a reasonable expectation of privacy in the area searched. <u>Mancini</u>, 8 F.3d at 107. Here, rather than testify

---

rooms. <u>United States</u> v. <u>Conway</u>, 73 F.3d 975, 979 (10th Cir. 1998); <u>see also</u> <u>United States</u> v. <u>Carr</u>, 939 F.2d 1442, 1444-46 (10th Cir. 1991)(notwithstanding a three-week stay, an unregistered resident failed to establish a reasonable expectation of privacy in a motel room in which the registered guest was not present and the unregistered resident presented no evidence connecting him to the room or the registered guest); <u>but see</u> <u>United States</u> v. <u>Williams</u>, 521 F.3d 902, 906 (8th Cir. 2008) (assuming in dicta an unregistered guest had a reasonable expectation of privacy in a motel room after a registered guest rented two rooms and informed the motel manager that "my friend is going to come in").

ADDENDUM - Panel Opinion   -  Page 8

or put on any evidence, Aiken relied on the government's evidence to satisfy his burden. On appeal, Aiken argues that as a guest who slept in the room, he "had an actual, subjective expectation of privacy . . . that was objectively reasonable." This, argues Aiken, is enough to meet his burden. We do not agree.

In Minnesota v. Carter, 525 U.S. 83 (1998), the Supreme Court considered whether an individual who was legitimately on the premise for the purpose of bagging cocaine had an expectation of privacy in an apartment. Despite the permission and presence of the apartment's occupant, the Court found that "the purely commercial nature of the transaction . . . the relatively short time on the premises, and the lack of any previous connection between respondents and the householder," resulted in a lack of Fourth Amendment protection. Id. at 91. Therefore, it is appropriate for us to consider the (1) the nature of the defendant's visit, (2) his length of stay, and (3) his relationship to the host in analyzing a defendant's reasonable expectation of privacy.

As in Carter, the evidence before the district court supports that Aiken was in the room for business purposes, specifically drug trafficking. One of the agents who executed the search testified that Aiken's presence in the room made him wary that the men were engaged in drug trafficking. A scale was on display and looked as if it had been recently used and the motel

- 9 -

ADDENDUM - Panel Opinion    -   Page 9

was known to the agents as a location commonly used by drug traffickers. Aiken provided no evidence to support that his visit was for non-business purposes.

As to Aiken's length of stay, the district court found that Aiken slept in the room and was present for "more than a brief period," however, the district court made no factual findings as to the amount of time Aiken spent in the room. All that the evidence showed was that Aiken was present in the room for less time than Bonnett because the video evidence depicted only two men checking into the motel and the district court concluded one of those men was Browne, to whom the room was registered, and the other was likely Bonnett. On the other hand, Aiken provided no evidence as to when he arrived at the motel or the room.

Additionally, Aiken put forth no evidence regarding how he knew the two men actually associated with the motel room. The agents testified that when they found the drugs in the drawer, Bonnett made a comment to Aiken, "We should have put it where we usually do." While this statement indicates that Aiken and Bonnett may have known each other before this encounter, it also shows that whatever the relationship was, it was likely for the business purpose of trafficking drugs. Further, there is no indication that Aiken had a relationship with Browne, the legal renter of the motel room, or even that he had stayed there with Browne's

permission.  Aiken could have easily supplied this evidence, but he did not.

      We acknowledge that this case is not easily resolved by the rules set forth in Carter because the district court made a finding that Aiken slept in the motel room for longer than a brief period of time, in contrast to Carter, where the Court explained that defendants were only present for approximately two-and-a-half hours.  See also United States v. Larios, 593 F.3d 82, 93 (1st Cir. 2010) (no reasonable expectation of privacy for "fleeting" visitor to motel room); United States v. Rodriguez-Lozada, 558 F.3d 29, 37 (1st Cir. 2009) (no reasonable expectation of privacy for a "casual visitor for a brief period").  Further, the government, ironically, put forth evidence in which Aiken told his mother that he "spent the night" in the motel room, further distinguishing the case from Carter.

      While the majority acknowledges the factual differences between this case and Carter, the dissent completely ignores the precedent set out by the Supreme Court in Carter, and instead relies squarely on Olson.  But, therein lies the problem.  While the district court found that Aiken slept in the room, there was no finding that he was an "overnight guest" within the meaning of Minnesota v. Olson.  There is a qualitative difference between an overnight guest and drug trafficker who is present inside a motel room and falls asleep for an unknown period of time.  Further, the

ADDENDUM - Panel Opinion   - Page 11

dissent suggests that the inference of Aiken's overnight guest status should be drawn in Defendant's favor; however, the Court can only make such inferences if they are reasonable. <u>See</u> <u>United States</u> v. <u>Owens</u>, 167 F.3d 739, 743 (1st Cir. 1999).[4] In light of all of the inferences the district court already made in Aiken's favor, it is not reasonable for this Court to assume that sleeping in a hotel room, for more than a brief period of time, means that Aiken was an overnight guest as envisioned by the Supreme Court in

---

[4] The dissent states that the "undisputed record evidence shows that Aiken stayed in the room overnight." This is an unreasonable inference. The dissent relies on several cases which discuss "reasonable inference drawing." <u>See e.g.</u>, <u>United States</u> v. <u>McGregor</u>, 650 F.3d 813, 823-24 (1st Cir. 2011); <u>United States</u> v. <u>Owens</u>, 167 F.3d 739, 743 (1st Cir. 1999). In certain circumstances, perhaps when the Defendant attempts to satisfy his burden or put on evidence to support his claim, inference making of the type envisioned by the dissent may be reasonable. Here however, Aiken provided no evidence to satisfy his burden, and the district court made no factual findings which demonstrate that Aiken spent the night in the room, therefore, it is impossible for this Court to reasonably infer that Aiken was an overnight guest with an expectation of privacy.

The dissent also argues that Aiken could satisfy his burden solely by relying on the Government's evidence -- specifically, the transcript of Aiken's call to his mother. We need not address the merits of this contention because notwithstanding the phone call, Aiken still fails to satisfy his burden. Simply put, the district court made six factual findings, all of which were made from inferences, and these findings, taken as a whole, are insufficient to show that Aiken had an objectively reasonable expectation of privacy in the motel room. The district court merely found that Aiken had slept in the room for "more than a brief period" at Bonnett's invitation. That is not a finding that he was an overnight guest within the meaning of <u>Minnesota</u> v. <u>Olson</u>, nor is it even a finding that he had spent the whole night in the room. And as explained above, any "inference" to the contrary is unreasonable.

ADDENDUM - Panel Opinion    - Page 12

Olson.  Had the Supreme Court meant to encompass all guests under
the Olson analysis, it would have said so, but as the dissent
itself notes, the overnight guest relationship envisioned by Olson
is imbued with an expectation of privacy because it is a
"longstanding social custom that serves functions recognized as
valuable by society."  495 U.S. at 96 (emphasis added).  And the
examples of overnight guests provided in Olson include
"houseguests," and visiting "parents, children, and distant
relatives."  Id. at 97.  Aiken does not fall into this category.

If there remains any doubt as to Aiken's reasonable
expectation of privacy in the motel room, we analyze further to
emphasize that Aiken failed to meet his burden.[5]

Aiken was not registered as a guest in the hotel room
and he did not have any possessions in the room besides the
sneakers he was trying to put on when the agents arrived and his
t-shirt.  There were no indicia present in the hotel room
supporting Aiken's overnight-guest status, such as an overnight
bag or toiletries.  Although Aiken's bus ticket was found in the
motel room, the presence of a ticket and the few articles of

---

[5] In addition to the factors we consider below, we note that
other circuits undergo similar analyses in the context of Fourth
Amendment protection.  See United States v. Williams, 521 F.3d
902, 906 (8th Cir. 2008) (finding no legitimate expectation of
privacy where the record failed to indicate the length of time the
defendant had spent in the hotel room, whether he had a key, and
whether he had personal belongings there).

ADDENDUM - Panel Opinion    - Page 13

clothing being worn by Aiken fail to show any expectation of privacy. Further, while Bonnett had a key to the room on his person, Aiken did not have a key to the motel room. If he had exited, he would have been unable to return, unless Bonnett allowed him to do so. Aiken may have been able to open and close the door, but it is unclear if he could do this without Bonnett's permission.[6] See United States v. Gomez, 770 F.2d 251, 254 (1st Cir. 1985)("Thus, there was no evidence that appellant had possession or control of the premises. Nor did [he] provide evidence of his ability to exclude others from use of the property."). It was Aiken's burden to demonstrate otherwise.[7]

---

[6] While the two agents' testimony conflicted as to who opened the door to room 218, the district court stated: "Pappas saw defendant Joshua Bonnett standing in the doorway . . . [s]tanding behind Bonnett inside the room was . . . Aiken."

[7] In support of its argument, the dissent relies on this Circuit's recent decision in United States v. Bain, 874 F.3d 1 (1st Cir. 2017), where the Court found that a Defendant, who was an overnight guest at his girlfriend's apartment, had a "sufficient connection with [the apartment] to mount an unfettered challenge to the search of that unit." Id. at 11.

Bain is patently distinguishable on both legal and factual grounds. First, Bain presents an entirely separate legal issue from this case: whether an overnight guest in a home has a property-based Fourth Amendment right to challenge the police's use of a key to open his host's front door. Aiken is not claiming here that the police trespassed upon his curtilage. Rather, at issue are his privacy interests inside the motel room, and whether he provided sufficient evidence to make a threshold showing that he had reasonable expectation of privacy. Bain thus has no bearing on our holding.

Furthermore, Bain is factually distinguishable from this case because Bain met his burden in showing that he had a reasonable expectation of privacy as an overnight guest. Bain offered

While Aiken provided no evidence as to his expectation of privacy, the government presented evidence showing Aiken distancing himself from the room, explaining to his mother that the room was not his and he was just visiting.[8] See United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994) ("[O]ne who disclaims ownership is likely to be found to have abandoned ownership.").

Because we find that Aiken failed to demonstrate an objectively reasonable expectation of privacy, we do not need to analyze Aiken's subjective expectations.

---

evidence of his social relationship to the host and purpose of his visit, beyond drug activity. Several forms of identification belonging to Bain were found in the apartment, including an auto insurance card, a MassHealth card and a AAA card. Id. at 25. Bain's girlfriend rented the apartment and Bain appeared to keep personal belongings in the unit, including several boxes of sneakers and a parking ticket in his name. Id. Agents also observed Bain's car outside the apartment complex on several occasions. Id. at 9. Here, Aiken's lack of evidence is fatal to his case.

The Court's statement in Bain, "[u]nder Supreme Court precedent, Bain's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable," does not vitiate the requirement that the defendant bears the burden of establishing he is an overnight guest as contemplated by Minnesota v. Olson. Aiken bears the burden of establishing a reasonable expectation of privacy in the hotel room, and Aiken failed to establish that he was an overnight guest within the meaning of Olson. Therefore, Bain has no bearing on our holding.

[8] The government provided recorded calls made by Aiken to his mother from the Bureau of Prisons. In one of the calls, Aiken stated: "Mom . . . [t]hat's what I kept telling you . . . I did not have a room."

- 15 -

ADDENDUM - Panel Opinion    - Page 15

We cannot find that Aiken had a reasonable expectation of privacy in the motel room. It remains unclear what purpose Aiken had in room 218, how long he stayed in the room, how long he slept in the room and how well he knew the occupant. While certain inferences can be drawn from the testimony provided, these inferences alone cannot satisfy Defendant's burden. We find that sleeping in a motel room for longer than a brief period of time, without more, is insufficient to warrant Fourth Amendment protection.

### IV. CONCLUSION

Aiken, at best a guest of a guest in room 218 at the Super 8 Motel, did not have a reasonable expectation of privacy in the motel room. For all the reasons described above, we <u>reverse</u> the decision of the district court and <u>remand</u> for further proceedings.

**-Dissenting Opinion Follows-**

ADDENDUM - Panel Opinion   - Page 16

**THOMPSON**, **Circuit Judge, dissenting.** Some say the Fourth Amendment — a provision that protects precious freedoms — is dying "a death by a thousand cuts." See United States v. Griffin, 589 F.3d 148, 154 (4th Cir. 2009) (Gregory, J., dissenting). They might be right. Just consider what happened here.

All agree that given how intensely personal Fourth Amendment rights are, see Rakas v. Illinois, 439 U.S. 128, 133 (1978), Aiken must prove that the contested search violated *his* legitimate expectation of privacy, under a test with two components — one subjective, the other objective, see United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009). The subjective component requires that he show that he had an actual expectation of privacy in the searched area. See Rheault, 561 F.3d at 59. The objective component requires that he show that this expectation is one society is ready to accept as reasonable. See id. Aiken must carry this burden by a preponderance of the evidence, see United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) — which is a more-likely-than-not standard, see United States v. Correa-Osorio, 784 F.3d 11, 24 (1st Cir. 2015). Accepting the judge's factual findings absent clear error but inspecting his legal conclusion *de novo*, we must scan the entire record in the light most flattering to his ruling, see United States v. Turner, 169 F.3d 84, 85 n.1 (1st Cir. 1999), "drawing all" — repeat, *all* — "reasonable

- 17 -

inferences in the ruling's favor," see United States v. McGregor, 650 F.3d 813, 823-24 (1st Cir. 2011) (citing United States v. Owens, 167 F.3d 739, 743 (1st Cir. 1999)).  And ultimately, we must affirm if any sensible view of the record backs that ruling up.  See United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007).

        Aiken introduced no evidence at the suppression hearing. He just cross-examined the government's witnesses.  And when all was said and done, the judge — after viewing the suppression-hearing record through the proper legal lens — made several critical findings:

1.  Bonnett "rented" the room with Browne the day before the search went down.

2.  So "the room was Bonnett's room" too.

3.  And "Aiken stayed there with Bonnett's knowledge."

4.  More, "Aiken was in the room" not just with Bonnett's "knowledge," but "with Bonnett's permission."

5.  The search "occurred around 9:00 a.m."

6.  Bonnett had "possession" of the room "and had a key to the room" when law enforcement "encountered him and Aiken at the motel."

7.  "The morning hour," the "appearance of the room," and the "appearance of its . . . two occupants — Bonnett and Aiken —" jibe with their "having slept in the room and,

- 18 -

ADDENDUM - Panel Opinion   - Page 18

therefore, having occupied the room for more than a brief period."

And make no mistake — the veteran judge did not pull these findings out of thin air.  Among the supporting evidence in the record is:

1. Bonnett's calling the room (in an affidavit) "our room" — meaning his and Browne's room.

2. An agent's saying the room had two beds, one of which "look[ed] like the sheets and the comforters were pulled back" and the other of which looked "like it had just been made."

3. The agent's saying Aiken had on shorts and maybe a t-shirt, but no shoes, while Bonnett had on "mesh shorts and a t-shirt" — for what it's worth, a quick check of publicly available records shows the outside temperature in the Lewiston area hovered around 43 degrees Fahrenheit at the time of the search,[9] a fact we can take judicial notice of.  See Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 71 n.6 (1st Cir. 2012).

4. And Aiken's telling his mother during a recorded jailhouse call that

---

[9] See Local Climatological Data Station Details, NOAA (last visited Nov. 14, 2017), www.ncdc.noaa.gov/cdo-web/datasets/LCD/stations/WBAN:94709/detail (select "2014" for year; select "November" for month; select "7" for day; then click "View Data").

ADDENDUM - Panel Opinion   - Page 19

> a. he had "spent the night" in Bonnett's room, with Bonnett's blessing;
>
> b. he "was asleep" when the agents showed up; and
>
> c. he "went back in the bed" after he first heard the agents' knocking.
>
> By the way, the prosecutor presented this evidence after agreeing with Bonnett's lawyer that the transcripts — which confirm Bonnett had "registered" as a motel guest — were relevant to the reasonable-expectation-of-privacy question.

Anyhow, after making his findings, the judge ruled that "Aiken had an actual, subjective expectation of privacy" in the searched room "that was objectively reasonable." Which triggered this appeal by the government.[10]

Critically, the majority rules none of the judge's findings clearly erroneous. Rightly so, since "[t]he clear-error hurdle is, of course, quite high" — under that standard, we can't flip the judge's "findings of fact or conclusions drawn therefrom unless, *on the whole of the record*, [we] form a strong, unyielding belief that a mistake has been made." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993) (emphasis added) (quoting

---

[10] The government also appealed the judge's ruling that Bonnett's privacy expectation met the subjective and objective criteria discussed above. But the government later asked us to dismiss that appeal, see Fed. R. App. P. 42(b), and we obliged.

ADDENDUM - Panel Opinion - Page 20

Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).[11]  And no judge on this panel sees anything approaching that standard here.

Yet curiously, despite letting the judge's findings stand, the majority says Aiken was not an "overnight guest," but merely a "drug trafficker who [was] present inside [the] motel room and [fell] asleep for an unknown period of time."  Having deemed his "guest status" inadequate to "resolve the question of whether he had a reasonable expectation of privacy," the majority then shifts focus to "(1) the nature of [Aiken's] visit" to the motel, "(2) his length of stay, and (3) his relationship to" Bonnett and Browne.  And after blasting him for coming "forward with no evidence on a motion that he had the burden to carry," the majority says an analysis of those three factors shows he has no "objectively reasonable expectation of privacy."  Then the majority basically ends it all with these words:  "sleeping in a motel room for longer than a brief period of time, without more, is insufficient to warrant Fourth Amendment protection."

But the majority makes an error right out of the gate, an error that infects its entire analysis.  I say this because the

---

[11] See also Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 46 (1st Cir. 2013) (noting that clear error means the judge got things "wrong with the force of a 5 week old, unrefrigerated, dead fish" (quoting S Indus., Inc. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001))).

- 21 -

ADDENDUM - Panel Opinion   - Page 21

judge's *unreversed* findings — coupled with the *uncontested* record evidence — actually point to Aiken's being an *overnight guest*. Think about it: Co-room-renter Bonnett let Aiken stay in the room, a room that was just as much Bonnett's as it was Browne's. That is a game-changing finding, since no one — not even the government — disputes that co-room-renter Browne had the authority to have guests stay over. And not only was Aiken in the room on Bonnett's say-so, but Aiken "slept" there, and "for more than a brief period" — yet another game-changing finding, especially since the undisputed evidence (which the *government itself* introduced) shows Aiken "spent the night there."

The majority tries earnestly — and in seven ways — to argue against the overnight-guest designation. But none persuades me.

First, the majority criticizes Aiken for using "the government's evidence to satisfy his burden" on the reasonable-expectation-of-privacy front, instead of "testify[ing] or put[ting] on any evidence" himself. But I know of no authority — and the majority cites none — suggesting that Aiken couldn't lean on the government's evidence in shouldering his burden. That's hardly a surprise, since solid precedent points in precisely the opposite direction — the Federal Reporter is full of cases declaring that we must "consider[] *all* the evidence" in deciding whether "[r]eversal is appropriate." See, e.g., United States v.

ADDENDUM - Panel Opinion   -  Page 22

_Martinez_, 762 F.3d 127, 130 (1st Cir. 2014) (emphasis added).[12]  If
more were needed — and I doubt that it is — even the prosecutor
conceded below that the judge could consider the government-
proffered jailhouse-call evidence in deciding whether Aiken had
Fourth Amendment rights in the room.  So argument-number one has
no oomph, as I see it.

Second, the majority says (emphasis mine) that while the
judge rightly inferred from the evidence that Bonnett had invited
Aiken into the room, we cannot "make _any other_ inferences to
support Aiken's reasonable expectation of privacy" because he
offered "no evidence" on an issue on which he bears the burden of
proof.  That statement strikes me as odd, and for a simple reason:
argument-number one implies that witness and affidavit testimony
offered by others can't help Aiken, yet argument-number two
concedes — in a way that seemingly contradicts argument-number one
— that the judge correctly drew the Bonnett-invited-Aiken
inference from witness and affidavit testimony offered by others.
Anyhow, the subtext of the majority's argument is the suggestion

---

[12] _See generally_ _United States_ v. _Castellanos_, 716 F.3d 828,
846 (4th Cir. 2013) (emphasizing that a "defendant need not
affirmatively present evidence of his legitimate expectation of
privacy; rather, he may simply 'point to specific evidence in the
record which the government [has] presented'" (quoting _United
States_ v. _Zermeno_, 66 F.3d 1058, 1062 (9th Cir. 1995) (alteration
in original))); _see also_ 6 Wayne R. LaFave, _Search and Seizure: A
Treatise on the Fourth Amendment_ § 11.2(b) (5th ed. Oct. 2017)
(noting that "it may happen that the [defendant's] burden is
actually met . . . by evidence given by the [government]").

that the law puts some kind of cap on the number of inferences
that judges can draw from the evidence. No dice, I'm afraid: the
majority doesn't identify — and I've not found — a single case
supporting that proposition, probably because precedent commands
us to "draw[] **all** reasonable inferences" in support of the judge's
ruling. See McGregor, 650 F.3d at 823-24 (double emphasis added).
Which, by my reckoning, takes all the wind out the majority's
can't-make-additional-inferences argument.

      Third, the majority elsewhere contends that "the amount
of time [Aiken] spent in the room" is "unknown" and — echoing a
familiar theme — asserts that because he failed to "put forth
evidence" on that score, "he failed to meet his burden." Not so,
I say. As noted above, the government introduced evidence — in
the form of an audio disc and transcripts of Aiken's jailhouse
calls with his mother — that Aiken had "spent the night" in
Bonnett's room. And once again, the majority cites no authority
— nor have I found any — indicating that Aiken could not rely on
this evidence in meeting his burden. Enough said about argument-
number three.

      Fourth, the concatenation of circumstances — the time of
the search (9:00 a.m.-ish), the room's condition (*e.g.*, one bed
unmade, the other just made), and the occupants' appearance (*e.g.*,
Aiken had just woken up and was barely dressed) — led the judge to
find that Bonnett and Aiken had "slept in the room." The majority

tries to score points by playing up how the judge made "no finding that [Aiken] was an 'overnight guest.'" The argument comes to naught, however. Yes, the judge never used the "overnight guest" buzz-phrase. But the judge did find that Aiken had "slept in the room" and thus had "occupied the room for more than a brief period." The majority thinks the "more than a brief period" finding has no significance — maybe the majority thinks there's a magic number of hours one must spend in a room to get tagged as an overnight guest, though the majority doesn't say what that number is (3 hours? 6 hours? 9 hours?). No matter. The undisputed record evidence shows that Aiken stayed in the room *overnight* — as the *guest* of Bonnett, who had rented the room the day before the search with Browne, as the judge supportably found.[13] So in other words, the uncontested evidence and the unreversed findings put Aiken squarely in the overnight-guest camp. And that means argument-number four isn't a difference-maker either, at least in my book.

Fifth, focusing on the "reasonable" part of the "all reasonable inferences" standard discussed in cases like <u>McGregor</u> and <u>Owens</u>, the majority suggests that it's simply "unreasonable" to infer that Aiken stayed in the room "overnight." I couldn't

---

[13] The majority criticizes Aiken for not producing evidence that he "had a relationship with Browne" or that he had stayed in the room "with Browne's permission." But because — as I've just explained — the room was just as much *Bonnett's* as it was Browne's, the majority's Browne-centric argument carries no weight.

- 25 -

disagree more strongly: given that the only evidence in the record is that Aiken "spent the night" in Bonnett's room, I think it's perfectly reasonable to infer that he stayed there "overnight" — put more bluntly, "spent the night" = "overnight." And to the extent the majority thinks inference-drawing is *verboten* in this context, our caselaw holds otherwise — to quote from one of our many cases: "[w]here specific findings are lacking, we view the record in the light most favorable to the [suppression] ruling, drawing *all* reasonable inferences in support of the challenged ruling." See <u>Owens</u>, 167 F.3d at 743 (emphasis added).

Sixth, in a variation of a just-discredited argument, the majority implies that because Aiken "provided no evidence to satisfy his burden," one can't draw the overnight-guest inference that he wants. The unstated but inescapable premise of the majority's position is that one can't make reasonable inferences from the *government's* evidence. But like the earlier one, this argument — also made without citation to any authority — is a no-go: the caselaw (as I keep repeating) says we must draw *all* reasonable inferences in favor of the judge's ruling after the reviewing the *record as a whole*, see <u>McGregor</u>, 650 F.3d at 823-24, and obviously, the government's evidence is part of the whole record.

Seventh and finally, the majority claims that Aiken can't be an overnight guest for constitutional purposes because

ADDENDUM - Panel Opinion   - Page 26

his case is too dissimilar to United States v. Bain — a hot-off-the-presses decision where we held that the defendant who had stayed overnight at his girlfriend's apartment could challenge the constitutionality of a search there that turned up (among other things) drugs and tools of the drug trade. See 874 F.3d 1, 10, 13-14 (1st Cir. 2017). Unlike Aiken, the Bain defendant provided "evidence of his social relationship to the host and purpose of his visit." At least that's what the majority thinks. I beg to differ. Again, and at the risk of excessive repetition, the unchallenged evidence here shows Aiken certainly knew Bonnett well enough to stay with him in the room overnight and to catch some Zs in one of the beds — activities that society regards as private and that put him in the overnight-guest category. See Minnesota v. Olson, 495 U.S. 91, 96-100 (1990) (stressing that an overnight lodging provides as much privacy and security on a short-term basis as one's home does on a long-term basis, thus giving the overnight guest a reasonable expectation of privacy). And the majority points to no language in Bain that compels a contrary conclusion.

    Given Aiken's overnight-guest status, the rest of the analysis is easy-peasy. Our judicial superiors held decades ago that a person's "status as an overnight guest *is alone enough* to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Olson, 495 U.S. at 96-

ADDENDUM - Panel Opinion   - Page 27

97 (emphasis added).  And the Court provided reasons aplenty for

the rule:

> To hold that an overnight guest has a legitimate
> expectation of privacy in his host's home merely
> recognizes the everyday expectations of privacy that we
> all share.  Staying overnight in another's home is a
> longstanding social custom that serves functions
> recognized as valuable by society.  We stay in others'
> homes when we travel to a strange city for business or
> pleasure, when we visit our parents, children, or more
> distant relatives out of town, when we are in between
> jobs or homes, or when we house-sit for a friend.  We
> will all be hosts and we will all be guests many times
> in our lives.  From either perspective, we think that
> society recognizes that a houseguest has a legitimate
> expectation of privacy in his host's home.

Id. at 98.  An overnight guest, the Court went on to say,

> seeks shelter in another's home precisely because it
> provides him with privacy, a place where he and his
> possessions will not be disturbed by anyone but his host
> and those his host allows inside.  We are at our most
> vulnerable when we are asleep because we cannot monitor
> our own safety or the security of our belongings.  It is
> for this reason that, although we may spend all day in
> public places, when we cannot sleep in our own home we
> seek out another private place to sleep, whether it be
> a hotel room, or the home of a friend.

Id.  Of course, it goes without saying (but I say it anyway) that

a motel room "can clearly be the object of Fourth Amendment

protection as much as a home . . . ."  See Hoffa v. United States,

385 U.S. 293, 301 (1966); see also Stoner v. California, 376 U.S.

483, 490 (1964).

　　　Relying on Olson, we held in Bain that the defendant's

status as an overnight guest at his girlfriend's apartment — in

and of itself — gave him "a reasonable expectation of privacy in

ADDENDUM - Panel Opinion   - Page 28

the [premises]." See Bain, 874 F.3d at 13.  So he had "a sufficient
connection with [the apartment]" to seek suppression of drugs and
drug-trade tools found there.  Id. at 11.  And because Aiken fits
within the overnight-guest category, Olson and Bain require us to
affirm the judge's order below — of that I am certain.[14]

      Perhaps sensing the difficulties in its position, the
majority attempts to distinguish Bain, arguing that Bain
"present[ed] an entirely separate legal issue from this case:
whether an overnight guest in a home has a property-based Fourth
Amendment right to challenge the police's use of a key to open his
host's front door."   "Aiken," the majority continues, "is not
claiming here that the police trespassed upon his curtilage" —
"[r]ather, at issue here is his privacy interests inside the motel
room, and whether he provided sufficient evidence to make a
threshold showing that he had a reasonable expectation of privacy."

_____

[14] The majority thinks I've ignored Minnesota v. Carter, 525
U.S. 83 (1998).  My response:  Carter held that two defendants did
not have a legitimate expectation of privacy in an apartment they
had occupied only for *2 ½ hours* and only for the purpose of
packaging drugs.  Id. at 86, 91.  The Carter defendants did not
come within the overnight-guest category, obviously.  See id. at
91.  But Aiken does, for the reasons recorded above.  So the
majority's Carter-driven argument can't succeed.

Separately but relatedly, the majority implies that I think
"the Supreme Court meant to encompass all guests under the Olson
analysis."  But I think nothing of the sort.  As I've been at pains
to stress, Olson holds that an *overnight guest* has a legitimate
expectation of privacy in his host's abode — and constitutionally
speaking, Aiken has achieved an overnight-guest status.

ADDENDUM - Panel Opinion    - Page 29

The problem for the majority is this. Before addressing and rejecting the government's claim "that a search defined in part by an invasion of property rights is a search only as to persons who could maintain a common law trespass claim," we emphasized how the defendant was an "overnight guest" of his girlfriend. Bain, 874 F.3d at 13. And we emphasized as well how "[u]nder Supreme Court precedent," his overnight-guest status "'is alone enough to show that he had an expectation of privacy in the [apartment] that society is prepared to recognize as reasonable.'" Id. (quoting Olson, 495 U.S. at 96-97). Importantly here, the just-quoted Bain statements are holdings — because they were necessary to the result there — and so we're bound to follow them. See generally Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67 (1996) (explaining that "when an opinion issues for the [c]ourt, it is not only the result but also those portions of the opinion necessary to that result by which we are bound"). And it is these holdings that devastate the majority's analysis.

Bottom line: Reading the record in the light most favorable to the judge's ruling, and keeping in mind that his decision must stand if any reasonable view of the evidence supports it, I believe the unreversed findings and the uncontested evidence establish — under controlling precedent — that Aiken was an "overnight guest" of Bonnett in a constitutional sense. Which again means Aiken had a legitimate expectation of privacy in the

ADDENDUM - Panel Opinion   - Page 30

motel room and so could challenge the search. And because the majority (though conscientious) sees the matter differently, I respectfully (but unequivocally) *dissent*.

CERTIFICATE OF SERVICE FORM

I hereby certify that on January 1, 2018, I served appellee's Petition for rehearing with a suggestion of rehearing en banc, in 17-1036, *United States v. Aiken*, by filing on the ecf system, where the appellant's counsel, the US Attorney, is an ecf recipient.


January 1, 2018

_/s/_____
Vivian Shevitz